IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 1:23-CV-00064

| | |
|---|---|
| DAMON E. BIDDLE, | ) |
| Plaintiff, | ) **CIVIL ACTION** |
| v. | ) **COMPLAINT** |
| EASIER FUNDING, LLC d/b/a 60 DAY CREDIT REPAIR, | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## COMPLAINT

NOW comes DAMON E. BIDDLE ("Plaintiff") by and through the undersigned, complaining as to the conduct of EASIER FUNDING, LLC d/b/a 60 DAY CREDIT REPAIR ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* and the North Carolina Credit Repair Services Act ("NCCRSA") under N.C. Gen. Stat. § 66-200 *et seq.* in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Western District of North Carolina and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Western District of North Carolina.

## PARTIES

4. Plaintiff is a "person," as defined by 47 U.S.C. § 153(39), and consumer over 18 years of age, residing in Marion, North Carolina, which lies within the Western District of North Carolina.

5. Defendant is a credit repair organization representing that: "We Fix Your Credit In 60 Days!"[1] Defendant is a limited liability company organized under the laws of the state of Utah with its principal place of business located at 162 North 400 E, Building C, Suite 302, Saint George, Utah.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. Prior to the conduct giving rise to the instant claims, Plaintiff was victim of identity theft and as a result had a number of erroneous and inaccurate obligations appearing on his credit reports.

9. In approximately September of 2021, in an effort to clean up his credit, Plaintiff came across Defendant and its credit repair services.

10. Plaintiff discussed the debts he wanted addressed due to the identity theft, and Defendant affirmatively represented those obligations would be removed from his credit report.

---

[1] https://sixtydaycreditrepair.com/

11. Defendant represented that it would be able to improve Plaintiff's credit within 60 days of signing up for its services by getting the negative information removed from his credit, and further provided a guarantee that within 90 days it would deliver a 100 point increase in Plaintiff's credit score.

12. Defendant guaranteed that its services would improve Plaintiff's credit and allow Plaintiff to qualify for more favorable financing options fast.

13. Finding the nature of Defendant's representations desirable, Plaintiff subsequently entered into a contract with Defendant for the provision of its services.

14. Plaintiff subsequently began making his payments to Defendant, which totaled $150 each month.

15. Under the contract between the parties, Defendant's total charge for the services offered was $1,800, spread over 12 monthly payments.

16. Despite Plaintiff making his payments for months, Defendant failed to deliver the represented results within 60 days of Plaintiff signing up with Defendant.

17. Defendant further failed to deliver the guaranteed 100 point increase in Plaintiff's credit score within 90 days of signing up.

18. After three months of making payments and seeing no results, Plaintiff cancelled his agreement with Defendant.

19. Despite Plaintiff cancelling his agreement with Defendant, Defendant failed to refund Plaintiff for payments he made in connection with the services Defendant failed to completely perform.

20. Frustrated, distressed, and confused over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

21. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm stemming from payments made for deficient credit repair services, further out of pocket damages, as well as numerous violations of his state and federally protected interests to be free from fraudulent and deceptive conduct on the part of credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

22. Plaintiff repeats and realleges paragraphs 1 through 21 as though fully set forth herein.

23. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

24. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

   a. **Violations of CROA §§ 1679b(a)(3)-(4)**

25. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

26. Defendant violated the above provisions of the CROA through the false and deceptive representations it made to Plaintiff regarding the efficacy of its offered services. Defendant

represented that Plaintiff would see an improvement to his credit score within 60 days of signing up for Defendant's services. However, Plaintiff did not see any such improvement within 60 days. Defendant further guaranteed a 100 point increase to Plaintiff's credit within 90 days, however, no such improvement was delivered. Upon information and belief, Defendant misrepresents the speed with which its services and results will be delivered so as to make consumers believe results and improvement will be delivered fast, only for Defendant to keep consumers on the hook for further payments.

27. Defendant further violated the above provisions of the CROA through its effort to contradict the oral representations made to consumers through its contract with consumers. Defendant guaranteed Plaintiff a 100 point increase in 90 days. However, in inducing Plaintiff to use Defendant's services, Defendant failed to disclose to Plaintiff that this 100 point "guarantee" was "split" between the various credit bureaus – so at most, Defendant's 100 point guarantee is really a 33 point guarantee. Defendant engages in this false and deceptive conduct in order to convince consumers to sign up for its services only to disclaim the representations made inducing consumer assent to its terms. Defendant's inclusion of a merger and integration clause in its contract furthers the fraudulent nature of its conduct.

    b.  **Violations of CROA § 1679b(b)**

28. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

29. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Upon information and belief, at the

time Plaintiff made his first payment to Defendant, Defendant had failed to perform any services for Plaintiff, and similarly continued charging Plaintiff despite failing to complete perform the services it agreed to perform. Furthermore, Defendant failed to refund Plaintiff for services it failed to completely perform for Plaintiff following Plaintiff's cancellation of his contract with Defendant.

    c. **Violation of CROA §§ 1679d**

30. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirement for the contracts between credit repair organizations and consumers. § 1679d(b)(4) requires credit repair organization to include, "a conspicuous statement **in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract**, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right."

31. Defendant violated 15 U.S.C. §§ 1679d(b)(4) through its failure to provide the requisite information and disclosures in the manner required by the CROA. Defendant's contract fails to provide a disclosure of Plaintiff's right to cancel his agreement with Defendant in bold face type in immediate proximity to the place reserved for Plaintiff's signature on the contract.

    d. **Violations of CROA § 1679f(b)**

32. The CROA, pursuant to 15 U.S.C. § 1679f(b), provides that "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

33. Defendant violated 15 U.S.C. § 1679f(b) through its numerous attempts to obtain a waiver of Plaintiff's protections provided by the CROA. Defendant's contract provides a number of

6

improper and unlawful clauses regarding certain fees that may be assessed, in an effort to get Plaintiff to waive the protections provided by § 1679b(b) and its directive that no fees or charges may be assessed prior to the full and complete performance of agreed services. Defendant's contract further contains an integration clause which seeks to insulate itself from liability in connection with the manner in which it represents its services and how such representations contradict the terms of the contract.

WHEREFORE, Plaintiff, DAMON E. BIDDLE, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE NORTH CAROLINA CREDIT REPAIR SERVICES ACT

34. Plaintiff restates and realleges paragraphs 1 through 33 as though fully set forth herein.

35. Plaintiff is a "Consumer" as defined by N.C. Gen. Stat. § 66-221(3).

36. Defendant is a "Credit repair business" as defined by N.C. Gen. Stat. § 66-221(1).

    a. **Violations of NCCRSA § 66-223**

37. The NCCRSA, pursuant to N.C. Gen. Stat. § 66-223(1), prohibits a credit repair business from charging or receiving "any money or other valuable consideration prior to the full and

complete performance of the services that the credit repair business has agreed to perform for or on behalf of the consumer."

38. Defendant violated the above provision of the NCCRSA in much the same way it violated § 1679b(b) of the CROA.

39. The NCCRSA, pursuant to N.C. Gen. Stat. § 66-223(3), provides that no credit repair business shall "[r]epresent that it can directly or indirectly arrange for the removal of derogatory credit information from the consumer's credit report or otherwise improve the consumer's credit report or credit standing, provided, this shall not prevent truthful, unexaggerated statements about the consumer's rights under existing law regarding his credit history or regarding access to his credit file."

40. Defendant violated the above provision of the NCCRSA in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA. Defendant's explicitly represented that its services would remove derogatory credit information in a completely exaggerated and over-sold manner.

41. The NCCRSA, pursuant to N.C. Gen. Stat. § 66-223(5), provides that no credit repair business shall "[m]ake or use any untrue or misleading representations in the offer or sale of the services of a credit repair business or engaged, directly or indirectly, in any act, practice, or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit repair business."

42. Defendant violated the above provision of the NCCRSA in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

    b. **Violations of NCCRSA § 66-224**

43. The NCCRSA, pursuant N.C. Gen. Stat. § 66-224, provides the requirements for written contracts between consumers and credit repair businesses.

44. Defendant violated the above provisions of the NCCRSA through its failure to comply with the North Carolina requirements for credit repair business contracts. Defendant's contract fails to provide the disclosure of consumers' cancellation rights in bold face type and fails to include a list of the adverse information sought to be removed.

45. The NCCRSA further provides that a violation of its provisions constitutes an unfair trade practice pursuant to N.C. Gen. Stat. § 75-1.1. N.C. Gen. Stat. § 66-225(f).

WHEREFORE, Plaintiff, DAMON E. BIDDLE, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to N.C. Gen. Stat. §§ 66-225(a) & 75-16;

c. Awarding Plaintiff punitive damages pursuant to N.C. Gen. Stat. §§ 66-225(a) & 75-16;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to N.C. Gen. Stat. §§ 66-225(a) & 75-16.1; and,

e. Awarding any other relief the Honorable Court deems just and appropriate.

**SIGNATURE PAGE FOLLOWS**

Respectfully submitted, this the 10th day of March, 2023.

| | |
|---|---|
| /s/ Nathan C. Volheim | /s/ Matthew R. Gambale |
| NATHAN C. VOLHEIM | MATTHEW R. GAMBALE |
| IL Bar No. 6302103 | N.C. Bar No. 43359 |
| SULAIMAN LAW GROUP, LTD. | OSBORN GAMBALE BECKLEY & BUDD PLLC |
| 2500 South Highland Ave., Suite 200 | 721 W. Morgan Street |
| Lombard, Illinois 60148 | Raleigh, North Carolina 27603 |
| T: (630) 568-3056 | matt@counselcarolina.com |
| F: (630) 575-8188 | T: 919.373.6422 |
| nvolheim@sulaimanlaw.com | F: 919.578.3733 |
| *Attorneys for Plaintiff* | *Local Counsel for Plaintiff* |
| *Pro Hac Vice Pending* | |